I didn't have a calendar. May it please the Court, Ina Lipkin on behalf of the Petitioner. The Petitioner requests this Court to find that in fact his testimony and his documentary proofs clearly established his identity and the acts of persecution which he endured in India. I might as well put out the whole string so that you can respond to it. But, you know, his birth certificate was undated. The driver's license, which purports to be a government document, was misspelled. It lacked any indication of self-authentication like a thumbprint or a signature across the picture or a name across the picture or anything like that. The picture that's on the license, even though he said he had four copies made and gave all of them to the licensing folks, was the same picture that was in his school, in the school form. Medical documents are undated. No indication how the father's affidavit got written in English. And he flat-out lied to the Border Patrol by saying he had hitchhiked across Canada when, in fact, he had taken a truck across. Now, in the face of all of those things, why was the agency compelled to find that he was credible under the Real ID Act? Yes. I will bear that in mind. I'll start with the documents to address these questions. First of all, the very threshold issue here is that the I.J. improperly speculated as to the authenticity of the documents. As is customary in immigration hearings, the I.J. can recommend to the government to make a forensics or overseas investigation, and very often the government attorney will, him or herself, state that they want to do that. I just recited, not obvious? Well, Your Honor, no, it is not. And I'll look at each document and tell you why the petitioner will argue that these documents are not as inconsistent as the I.J. might have thought. On the record, the administrative record, page 261, there's the birth certificate. It states that the date of birth is 6-4, 1982, and says date of registration 16-4, 1982. As the I.J. is not an expert in document preparation in India, it may very well be that date of registration means the date of issuance of this document. We don't know. If there was a question asked to whether this failed to establish the date of issuance, it could have been sent to forensics. Without the I.J. speculating and then the board reaffirming that speculation. On to the driver's license, it's true. There's no thumbprint. There's no signature. But we don't have anything in the record that would state that lack of those two components on the driver's license automatically makes it suspect or invalid. Again, very easily, well within the government's ability, they could have sent that document off. But instead, the I.J. speculated that, well, the face of the document negates its authenticity. He really just left two conclusions with that. In light of the Respondent's otherwise very consistent testimony, posed with his also good demeanor that the I.J. remarked on. Turning to the affidavits, the Sharmani-Kali Dalman letter and the medical documentation, all this Respondent could do was make a document request. He's here. The affidavits and the documents are in India. He could pick up the phone and make a call. He is not involved in the production or content of the documents. He did the best he could to supplement the record, which is his burden. It is his burden to gather documentation. And that's what he had done. He cannot control whether the offense, for example, the doctor, failed to put the date of issuance on the letter. He cannot control that his father did not mention every aspect of his arrest, including his outward appearance after he was released, whether he was bruised or not. It is enough that he received the documents that corroborated those elements of his claim. In other words, that he was arrested, that a bribe was paid for his release, that he received medical attention. Also, the I.J. was completely wrong in mischaracterizing the Sharmani-Kali Dalman letter in finding ultimately that the Respondent failed to provide evidence of his membership. In fact, he did provide evidence of his membership. Maybe that letter did not contain all the elements of his claim as the I.J. would have hoped, but it did establish his membership, which then relates to the I.J.'s final determination that Respondent failed to establish the elements of his claim, because if you take apart his documentary findings of lack of authenticity, when this Court has on numerous occasions found that the kind of authenticity that he had demanded is not necessarily required, you will find that, well, he did the best to establish his identity, and he did the best to establish those material portions of his claim, such as arrest, release, hospitalization, and then you have to question his findings as a whole. Central to this case is, did he establish his identity? And it's true that the Board seems to have dismissed the I.J.'s findings, the negative inference he made about that San Francisco website regarding the Indian consulate's passport procedures. But we can't ignore that. We have to go back and look at that, because if Respondent's testimony is found credible, then his testimony that he attempted to further corroborate his identity by going to that consulate office and getting a passport issued but getting denied, well, that would corroborate his identity, the steps that he took to establish who he was, despite all the other documentary evidence, such as the birth certificate and this driver's license. Turning to the issue of the statements at the border, the Court has held that, in a similar context, visa concerns facilitating travel to the United States, if they don't – if they – let me look at my site. If they're not – if they're incidental to the claim of persecution, then they cannot form a basis for an adverse credibility measure. And that's true. But if this Court looks at each piece of documentary evidence that the Respondent had submitted and finds that the IJ and the Board had indeed engaged in speculation in questioning the authenticity of the documents, then the rest of his case, including  and with the documentary evidence, would just leave this one issue. What did he tell the crossing – the border guard? And then if we find his testimony credible, then we must also find that his allegation that the agent told him to tell this falsehood to facilitate his entry to the U.S., that also has to be taken as credible. I think I might reserve the rest of my time. Thank you. May it please the Court, my name is Samia Nasim. I represent the Attorney General. Your Honor, the record does not compel the conclusion that Mr. Singh is credible, where he admitted that he lied to border agents. I know this is post-real ID, but we have said in the past that a lie at the border is not inconsistent with credibility if they're trying to seek asylum and they tell a story. And in this case, there's a fairly obvious, consistent notion of the agent who is bringing him across Canada under the circumstances that they've discussed, doesn't want to be tracked down himself and he tells him to tell this lie to hide the agent's identity. That doesn't seem the strongest part of the government's case at all. Lots of people come into the United States telling falsehoods. Yes, Your Honor. The situation here is that Mr. Singh admitted that he lied. It is clear that he has admitted that he's not credible in that respect. And although, you know, with respect to your assertion that he is not a significant part of this case, he's also shown that he's not consistent during his testimony. He specifically testified that his license picture was taken by a professional, that all four copies of his license picture were given to the government in 2002. However, on the same page of testimony, he turns around and he says that it was actually a lie. It was actually taken in 2001 by a college on a college campus. I read the interchange and he said that they asked for two and then the question posed it as four and then when it was repeated as four, he went along with it. Witnesses often say things that don't quite reflect what the cold record now that we're sticking him with would support. Because the question originally or his answer originally said I had four pictures taken and they asked for two and then the question went ahead and led him to believe that he was answering something in that line of questioning. I'm not saying that you're wrong. I'm just saying I don't find it clear cut. Yes, Your Honor. Well, on that point also, he did mention that his pictures were taken in 2002 and then later recanted that and claimed that the pictures were actually taken in April 2001. So there was also a glaring inconsistency there. Taken by the university. Right. And he also said that all four, his words were that all four pictures were given to the government, where in reality apparently they were not and apparently they weren't even taken by a professional. They were taken on a college campus. Well, he said he had them taken in a photo booth. He told them that. Right. It may well have been on the university. Anyway. Your Honor, it was his burden to establish that he's a credible person. He simply failed to do that. He also failed to provide corroborating evidence. All of the affidavits that he provided substantially failed to corroborate many of his claims. The affidavit from his father didn't mention that he attended any rallies, that he was arrested in conjunction with his party activities, that he's accused of having relations with terrorists. And that's important because he claimed in his testimony that the police told his father that he was accused of having relations with terrorists, and his father never went on to mention that in his affidavit. His affidavit from Veena Rani didn't mention that he was beaten, tortured, or abused in any way, despite the fact that he was hospitalized for 7, 10, and 12 days after each arrest, and the fact that she helped release him from jail. The affidavit from Mr. Mann also failed to mention his duties or activities, his arrests, his custodial abuse, or even why he would be persecuted. In fact, it failed to mention that he even had any involvement in Mr. Singh's release or any knowledge of the event at all. I just introduced just simply to show that he was a member of that group for any other purpose. Isn't that correct? Yes, Your Honor. And while I do understand that Mr. Singh cannot control what these people wrote in their affidavits, this is the evidence that he submitted to corroborate his claims, and it does not corroborate a lot of his claims. Corroborated membership. Did he offer it for anything else? I'm not sure, Your Honor. Isn't that relevant? I mean, would you expect the head of the organization to know what happened to this guy individually? Well, according to his testimony, he specifically testified that while he didn't believe that he would recognize Mr. Mann on the street, he said that Mr. Mann actually knew all of the members, which sounded a little fishy to me when I read the record because there were apparently thousands of members of this organization. However, that was Mr. Singh's testimony. And so, and especially because he was consistent with establishing membership, not that he would know the details of what happened to him on a particular occasion. However, Your Honor, the party was actively involved in releasing him from jail and negotiating a release for him and helping pay a bribe. So it's kind of, again, suspicious that they wouldn't make note of that, that the fact that he was ever even, you know, that they had any involvement in his release. Your Honor, even if Mr. Singh was criminal, even assuming that that was a possibility, the record does not compile the conclusion that he cannot relocate within India. And according to the INS resource information article submitted by the Department of Homeland Security, the police were only likely to pursue the highest profile fugitives, numbering just a handful outside the state of Punjab. And Mr. Singh has made it clear that he's not a high profile person. He's not a significant member of the party, but actually a small-time person on page 197. And he was never a leader on page 202. And additionally, it is not established that he was accused of knowing terrorists. Again, he says that the police told his father this, but that's not part of his corroborating evidence. And further, according to the director of the South Asia Human Rights Documentation Center, simply holding pro-Khalistani views would not make an individual a high profile suspect. Page 496. Therefore, Mr. Singh can relocate within India, outside of the Punjab, and the record does not compile a contrary conclusion. Can I ask you about the documents? What is it about the driver's license that makes it flawed? Oh, Your Honor, the driver's license was riddled with problems. Tell me about them. Well, first of all ---- I'm looking at the driver's license. Sorry, Your Honor? I'm looking at the copy of it. First of all, there was supposed to be ---- it doesn't comply with his own self-authentication requirements. He didn't have his signature on there. He was supposed to have his signature across his or his name across his photograph. That's not there. There's a spelling mistake where they're supposed to say license, and instead they said liance. That's very ---- those are several of the problems right there. Additionally, it appeared that the license had been tampered with, where a pin had been removed and staples had been replaced. It had been laminated. There were just so many problems with that license. It just made it a very ---- made it not a corroborating document. Now, the counsel said that you have it within your capacity to test it forensically, to find out whether, in fact, or to verify. Could you explain what the government can do or the IJ can ask to have done if there's doubt about the legitimacy? Your Honor, I'm not exactly sure on the rules on that, but I would argue that this is so incredible and it's just so tampered with and there's so much missing information. Maybe in a situation where there was a question of whether a document was credible or not or a claim there may be a chance where an immigration judge could seek out further testing, but in this situation where there's a missing signature, it's clearly tampered with, there's spelling errors in a government document, it doesn't seem that the judge would need to delay proceedings by seeking additional. You've never seen a spelling error in a government document? Actually, Your Honor, personally I haven't. I'm sure that they exist. You will. I guarantee it. I mean, license is spelled correctly throughout the document. There's one typo in it. And that's acceptable, Your Honor, except that the fact that his signature isn't across his photograph and so on and so forth. But there's a stamp across it. Excuse me? There's a stamp on top of it. Well, he's also missing his signature. There's also a pin missing. You explained that. He said he took it apart so that he could laminate and protect the photograph part. Yes, Your Honor. It's just that there's too many problems with the document. I think it's important for the record to compel the conclusion that that's a genuine document and that there's no they hadn't been tampered with or that it was actually a legitimate license issued by a legitimate place. But barring any further questions from this Court, the Attorney General respectfully requests that this Court deny this petition for review. Thank you. Thank you. Ms. Licken? Just very briefly, Your Honors. I want to revisit the issue of the documentary evidence. The Court has held that a mere omission of a fact in a doctor's letter in a Sikh case did not constitute a sufficient basis for an adverse credibility finding. If the Respondent's or, excuse me, if the Petitioner's affidavits. Because it didn't go to the heart of the claim. But that's not a requirement anymore. And that's the rub. I understand. However, had one of the affidavits misstated the date of an arrest or omitted a date of an arrest, I think that is something that would more seriously show some possible inconsistency going to incredibility. But there was none of that. None of these documents actually were inconsistent with his testimony in court regarding the persecution he suffered or fears. Again, with the driver's license, there is nothing patently obvious that this document is not legitimate because we don't know what are the standard document requirements in India. Just because it says you have to sign it doesn't mean you have to. Everyone has. How else would you establish it? Well, again. It says it on the document. First of all, the easiest way, again, is for the government to send it off to forensics. But I could give you a more. What would forensics do? What would forensics do? That's what I tried to get the government to answer, and I didn't get an answer. So what do you think they would do? Well, I've been practicing for ten years, and I've seen hundreds of these types of, especially Sikh cases. And in my experience, the government sends it either for forensics to a laboratory, I believe in Virginia, where they compare with other specimens, or they send it overseas. For example, they'll go to the local driving issuing license authority in state. Is this the kind of document you issued in this year? But I just want to make one more point. How many times do we get credit cards here in the United States where it clearly says sign the back? We don't always sign the back. That doesn't make it an illegitimate document that we can't use. One last thing, if I may. I bet you it would make our driver's license unusable. But according to our standards here in the United States, we don't know what the standards in rural Punjab villages are. We just don't. We can only go by the Respondent's credible word. One last word, if I may, to squeeze it in about country conditions, and that is the country condition information was very vague, as we argued in our brief.  The last report was dated 2003 or 2004. It's 2009. With a remand, we can get more documents and see what the conditions are now. Thank you. Thank you, Ms. Lookin. Thank you, counsel, for the argument. The matter just argued will be submitted.  Thank you. Thank you.
judges: Fletcher, Rymer, Fisher